**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN J. RUSSO** | : | **CIVIL ACTION 22-1982 CRIMINAL ACTION NO. 20-47** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL CARAVAJEL, Director of the Bureau of Prisons, et al.** | : | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS** **NOVEMBER 7, 2022**

Petitioner pled guilty to an Information charging him with one count of wire fraud (Count One) and one count of making false statements on a tax return (Count Two). The charges arose out of Defendant's scheme to embezzle nearly $3,000,000 from his former employer and using the embezzled funds to fund an extravagant lifestyle.

On October 5, 2020, the Court sentenced Petitioner to terms of imprisonment of 36 months on both Counts with the terms to be served concurrently. The Court also sentenced Petitioner to 36 months of supervised release on both Counts with the terms to be served concurrently following the conclusion of his prison sentence. The Petitioner began serving his sentence at the FCI-Schuylkill Satellite Prison Camp on December 4, 2020.

On June 14, 2021, just over six months into his sentence, Petitioner filed a pro se motion for compassionate release pursuant to the First Step Act ("FSA"),18 U.S.C. § 3582 (c)(1)(A)(i), claiming that his asthma, anxiety disorder, obstructive sleep apnea

and COPD, coupled with the threat of contracting COVID-19 entitled him to compassionate release. On December 7, 2021, the Court issued a Memorandum and Order denying the motion for compassionate release [ECF 53 and 54].

On February 9, 2022, the Federal Bureau of Prisons ("BOP") transferred Petitioner to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281, 516. As a result, Petitioner served only 14 months of his total term of 36 months in prison. Once in home confinement, Petitioner became under the supervision of the BOP's Philadelphia Residential Reentry Center ("RRC"). The RRC is administered by the Kintock Group, Inc., the contracted federal halfway house for the Eastern District of Pennsylvania.

On May 16, 2022, the Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking an award of earned time credits under the FSA. Petitioner contends that upon his release from FCI-Schuylkill, he received only partial earned time credits that he should have earned under the FSA.[1] As a result of receiving partial credits through December 1, 2021, Petitioner contends that his sentence completion date was changed from June 23, 2023 to December 23, 2022. Petitioner requests that the Court grant an "immediate award of [FSA] Earned Time Credits, resulting in his immediate transfer to Supervised Release." [ECF 69 at p.5.] He further

[1] The FSA allows eligible inmates who successfully complete certain recidivism reduction programs or productive activities to receive time credits to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A), (C). An inmate can earn 10 days of credit for every 30 days of successful participation. See id. § 3632(d)(4)(A)(i). Moreover, eligible inmates assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn 5 additional days of time credit for every 30 days of successful participation, for a total of 15 days' time credit per 30 days' successful participation. *Id*. § 3632(d)(4)(A)(ii). However, an inmate may not earn time credits for EBRR programs or PAs completed prior to the statute's enactment. *See id*. § 3632(d)(4)(B)(i).

requests that "the additional time served under home confinement (approximately two months) be credited towards his Supervised Release term." *Id*.

The government has filed a motion to dismiss the Petition for failure to exhaust administrative remedies. For the reasons that follow, the government's motion will be granted and the habeas petition will be dismissed without prejudice to Petitioner's right to proceed with it after he has completely and properly exhausted his administrative remedies.

Although § 2241 does not itself contain an exhaustion prerequisite, our Court of Appeals (and other courts) have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. See *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986)); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id.* at § 542.13. An inmate can then file a formal written Administrative Remedy Request on the specified form. *Id.* at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id.* at § 542.15.

Since Petitioner is currently in home confinement, he does not have to informally present the issue to a BOP staff member. 28 C.F.R. § 542.13(b).

Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. See *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co*., 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).

Petitioner admits that he has not followed the BOP's Administrative Remedy Program but argues he has complied with the exhaustion requirements set forth by the Kintock Group, as he has sent two requests to his case manager at Kintock Group, another request to the Federal Director of the Kintock Group and contacted (through his case manager and the Federal Director) the BOP's Northeast Regional Office and the BOP Central Office. In order to have properly exhausted his administrative remedies, however, Petitioner must have complied with the BOP's Administrative Remedy Program. See *Dyer v. Fulgam*, No. 1:21-CV-104, 2021 WL 3673825, at *2 (E.D. Tenn. Aug. 18, 2021) (The Court held that similar attempts at exhaustion to those Petitioner has taken in this case did not satisfy the exhaustion requirement.)

Defendant also argues that he should be exempted from the exhaustion requirement because resolution of the issue only involves statutory construction. The Court does not agree.  Petitioner does not identify any question of statutory construction that this Court could resolve. Petitioner simply wants the Court to order the BOP to

award the full amount of any earned time credits he claims he is entitled to under the FSA based on his completion of recidivism-reduction programming. However, it is the BOP, not this Court, that should make the eligibility determination and credit calculation in the first instance. *See United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996) (holding the issue of sentencing credit "is not ripe for review until the Bureau of Prisons has ruled on a defendant's request for credit"); *see also United States v. Wilson*, 503 U.S. 329, 332-33 (1992) (holding that it is the BOP's obligation, not the court's, to compute and apply sentencing credits).

Petitioner also argues that he should be exempted from the exhaustion requirement because exhaustion would be futile.

Petitioner's entitlement to the application of FSA credits is not so certain that it could be considered futile to exhaust his administrative remedies. The BOP will first have to decide whether Petitioner successfully participated in a recidivism reduction program or productive activities before it will apply any earned time credits toward time Petitioner spends in home confinement or on supervised release. *See* 18 U.S.C. § 3632(d)(4)(C). ("Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release.") Again, it is the BOP that should make this decision in the first instance.

The Court recognizes that Petitioner's home confinement is set to expire on December 23, 2022 and that he may not be able to exhaust his remedies before that date. Nevertheless, exhaustion is not waived simply because a habeas petitioner believes that the length of the administrative process would preclude him from receiving

full relief. *Hughes v. Coakley*, No. 5:15-CV-08088, 2016 WL 744941, at *3 (S.D.W. Va. Feb. 3, 2016), *report and recommendation adopted*, No. 5:15-CV-08088, 2016 WL 742121 (S.D.W. Va. Feb. 24, 2016) Petitioner will still have the opportunity to apply any earned time credits he may receive under the FSA to his 36-month term of supervised release. See 18 U.S.C. § 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), 3632(d)(4)(C).